GERMAINE MALO *vs.* VINCENT J. MCALOON, *C. T.*

MAY 17, 1940.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

CAPOTOSTO, J.   This is an action of trespass on the case brought against the city of Pawtucket under the provisions of the general laws of 1938 imposing liability upon municipalities for injuries resulting from the defective condition of public highways which they are by law obliged to repair and keep safe and convenient for travelers.

The case was tried before a justice of the superior court sitting with a jury.   At the close of all the evidence, the defendant moved for a directed verdict on the ground of a material variance between the proof of the location of the alleged defect in the highway and the description of such location in the notice given to the city, as required by G. L. 1938, chap. 352, § 7.   The trial justice denied the motion

and the defendant thereupon duly excepted. The jury returned a verdict for the plaintiff for $1550. The defendant's motion for a new trial, on the grounds that the verdict was against the weight of the evidence and that the damages were excessive, was heard and denied. The case is before us on defendant's exceptions to the denial of its motion for a directed verdict and for a new trial.

The plaintiff's notice of claim that was given to the city, as required by the statute, describes the unsafe, defective and dangerous condition, about which the plaintiff complained, as located in the traveled part of the westerly sidewalk of Booth avenue, "at a point in said sidewalk about sixty-five feet north of the northerly line of Vine street, in said Pawtucket, and at a point about opposite the premises numbered 74-76 on said Booth avenue." The notice then sets forth that the defective and dangerous condition so located "consisted of a cement block of two steps approximately twelve inches high, about two feet long, and about one foot wide."

The evidence shows that Booth avenue, which runs approximately north and south, is a public highway with uncurbed sidewalks. Vine street crosses Booth avenue in an easterly and westerly direction. The building numbered 74-76 Booth avenue is a three-family house, with two entrances on the westerly side of Booth avenue and north of the northerly line of Vine street. In front of each entrance there are two cement steps "exactly the same", extending 2.9 feet from the building line out on the traveled part of the sidewalk. The steps in front of the first entrance begin at a point 61.03 feet north of the northerly line of Vine street and the steps in front of the second entrance begin at a point 84.15 feet from that line.

The facts are practically undisputed. Briefly, they are as follows: At about 7:30 o'clock, p.m., on March 22, 1939,

the plaintiff, a woman fifty years old, was walking northerly on the westerly sidewalk of Booth avenue towards her brother's home, which was beyond the building known as number 74-76 on that street. It was dark, the nearest street light apparently being at the corner of Booth avenue and Vine street, and it was the first time that the plaintiff had traveled on that street. An automobile was parked in front of the building at 74-76 Booth avenue, with its wheels partly on the sidewalk. In passing this automobile, the plaintiff "tripped upon and stumbled over" the cement steps at the second entrance to that building. She fell to the ground, breaking her left arm between the shoulder and the elbow, and suffering other minor injuries to her back, knee and foot.

The defendant rests its case entirely on the argument that the obstruction in the sidewalk of Booth avenue, which the plaintiff described in her notice to the city, was not the obstruction in that sidewalk which actually caused her fall. It argues that the notice placed the obstruction at "a point in said sidewalk about sixty-five feet north of the northerly line of Vine street", while the obstruction over which she really fell began at a point 84.15 feet from that line. It therefore contends that this constituted a fatal variance, sufficient to furnish ground for a directed verdict in its favor.

This case is unusual. A similar situation has not heretofore been presented to this court for its consideration, and no decided case of a similar character has been found by us or cited to us by the parties in interest. In the circumstances, we will treat it as a case of first impression, confining ourselves strictly to the facts in the record before us.

In thus considering the question at issue, there are certain fundamental facts that must be kept in mind. First of all, the two obstructions that the city of Pawtucket permitted to remain on the traveled portion of the westerly sidewalk of Booth avenue, north of the northerly line of

Vine street, were "exactly the same", according to the testimony of the assistant city engineer of Pawtucket, who testified for the defendant. Secondly, the notice places the obstruction in the westerly sidewalk of Booth avenue *"about* opposite the premises numbered 74-76 on said Booth avenue", a known permanent object. (italics ours) Both sets of steps were in fact on that sidewalk and "about" opposite the designated premises. Thirdly, the notice states that the obstruction was *"about* sixty-five feet north of the northerly line of Vine street." (italics ours) As a matter of fact one set of steps began 61.03 feet north of that line, and the second set of steps began 84.15 feet therefrom.

It is to be observed that, in locating the obstruction with reference to the designated building and the distance of such obstruction from the northerly line of Vine street, the notice uses the word "about" in each instance. The use of this word is significant, and it cannot be disregarded in order to give the statements in which it appears a meaning of mathematical certainty. The word "about" indicates an approximation rather than actual measurement when used in connection with place or distance.

If, as the defendant here apparently argues, the distance stated in the notice now before us is to be treated as the statement of a mathematical fact, then there would be no set of steps on the sidewalk sixty-five feet north of the northerly line of Vine street. The defendant's engineer testified that the first set of steps began 61.03 feet from that point and ended 63.93 feet therefrom. This fact tends to show two things: First, that the specified distance in the notice, especially when considered in connection with the word "about" which immediately precedes it, was intended as an approximate distance; and second, that so considered, it might reasonably refer to either of the two identical sets of steps about opposite the building at 74-76 Booth avenue.

What construction should be given to the statute relating to notice in this class of cases was considered by us in *Gannon* v. *Fitzpatrick, C. T.,* 58 R. I. 147. Such statute should be construed with liberality in favor of the plaintiff where it appears that reasonable notice of the time, place and cause of the accident was given to the municipality.

In *Lane* v. *Cray, C. T.,* 50 R. I. 486, the purpose of the notice to the municipality is concisely stated at page 488 of that opinion. It is in accord with previous decisions of this court holding that the notice is sufficient if, complying with other statutory requirements, it describes with reasonable certainty the place of the alleged defect in the public highway. *Comery* v. *White, C. T.,* 40 R. I. 21; *Foxwell* v. *Sullivan, T. T.,* 34 R. I. 538; *Perry* v. *Sheldon, T. T.,* 30 R. I. 426; *Maloney* v. *Cook,* 21 R. I. 471. The statute does not require that the notice shall describe such a place with technical accuracy. As the court observed in the *Comery* case, at page 31 of that opinion, "it was never contemplated that one who has been injured must employ a surveyor to fix the precise spot where the injury occurred."

In view of our decided cases, we do not believe that the defendant would contend that the notice in the instant case was insufficient, if there were only one obstruction of the character and nature that it describes. Its contention here is based solely upon the fact that there are two such obstructions, "exactly the same", to either of which the notice may apply. These identical obstructions are within 20.22 feet from each other and both "about opposite" the building numbered 74-76 Booth avenue. In the circumstances, the real question is whether the defendant was prejudiced in its investigation and defense of the plaintiff's claim because of existing conditions at the place described in the notice.

The defendant makes no claim that it was deceived or misled in its investigation as to the place and character of

the obstruction by the information contained in the notice, or that it was put to any disadvantage in the trial of the case in the superior court because of any uncertainty resulting from the notice. The evidence shows, as a matter of fact, that the notice did not mislead the defendant. After its receipt, the defendant's engineer made a careful examination of the place described in the notice and measured *both* sets of steps "about opposite" the building numbered 74-76 Booth avenue, and also measured the distance of *each* set of steps from the northerly line of Vine street.

The defendant apparently construed the notice to mean that the plaintiff was injured by tripping over either one or the other of the two sets of steps in front of the building at 74-76 Booth avenue. Her injury did occur at that place and as a result of an obstruction of the character and nature described in the notice. In the special circumstances of this case, the notice satisfied the purpose of the statute. We therefore find no such variance between the evidence and the notice as would have justified the trial court in granting the defendant's motion for a directed verdict because of such contention. This exception is overruled.

The sole ground urged by the defendant under its exception to the denial of its motion for a new trial is that the damages are excessive. The only substantial injury suffered by the plaintiff was a transverse fracture of the bone of the upper left arm. No joints were involved. The plaintiff's money loss was about $50. In his decision from the bench on this motion, the trial justice refused to disturb the verdict of the jury in the sum of $1550, saying that as he had never had a broken arm and some one or more members of the jury may have had such an injury, the jury was better qualified than he was to fix the amount of the damages which the plaintiff should receive.

In basing his decision on such a ground, the trial justice clearly misconceived his duty in the premises. This court

has said repeatedly that, in considering a motion for a new trial, it is the duty of the trial justice to base his independent judgment as to the correctness of a jury's verdict upon his consideration of the credibility of the witnesses and of the weight of the evidence. *Colgan* v. *United Electric Rys. Co.*, 62 R. I. 184, 4 A. 2d. 258. On such a motion, the trial justice should not be influenced by speculative considerations, but should reach his decision on the evidence in the case.

Almost at the very end of his decision we find the trial justice saying that he did not believe that there was "a proper verdict in this case", and that $1550 was "too much". But, since the jury had fixed that sum, he would not say that "five hundred or seven hundred or a thousand dollars would be a proper verdict." If, giving due weight to the verdict of the jury, it was his considered and independent judgment from the evidence in the case that the verdict, in so far as it concerned the matter of damages, was improper and that the sum fixed by the jury was "too much", it was incumbent upon him to fix a remittitur and order a new trial unless such remittitur is filed.

On our consideration of the evidence we are of the opinion that any sum over $1000 would be grossly excessive. The trial justice was clearly in error in failing to fix a remittitur. The defendant's exception on this point is sustained.

The case is remitted to the superior court for a new trial, unless the plaintiff, on or before May 27, 1940, shall file in the office of the clerk of the superior court a remittitur of all of said verdict in excess of $1000. In case the plaintiff shall file such remittitur, the superior court is directed to enter judgment on the verdict as reduced by the remittitur.

*Thomas L. Carty,* for plaintiff.

*John A. O'Neill, City Solicitor,* for defendant.